UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHARAN S.,[1]

      Petitioner,

      v.

WARDEN OF THE CALIFORNIA CITY
DETENTION FACILITY, et al.,

      Respondents.

No. 1:26-cv-03017-TLN-JDP

**ORDER**

This matter is before the Court on Respondents' Motion to Dissolve the Temporary Restraining Order ("TRO").  (ECF No. 6.)  For the reasons set forth below, Respondents' motion is DENIED.

///

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from *pro se* Petitioner's allegedly unlawful detention.[2] (*See* ECF No. 1.) Petitioner entered the United States on or about October 31, 2024, by crossing the border from Canada without inspection to seek asylum. (*Id.* at 4.) Petitioner was detained by immigration authorities, taken to an immigration detention center, and subsequently released after expressing a fear of returning to his home country. (*Id.* at 109.) Petitioner was issued a Warrant of Arrest/Notice to Appear under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i)(I).[3] (*Id.* at 101.) Petitioner has a pending asylum application and is currently in removal proceedings. (*Id.* at 4.) Petitioner has no prior criminal history (*id.* at 101), and he asserts he has never been convicted of any crime, has no history of violence, and is not a danger to the community (*id.* at 5).

On January 8, 2026, U.S. Department of Homeland Security conducted an enforcement action on a primary target (not Petitioner) in Elmont, New York, and Petitioner was arrested during this action. (*Id.* at 5, 100.) Thereafter, Petitioner was detained at the Delaney Hall Detention Facility in Newark, New Jersey. (*Id.* at 115.) Petitioner, represented by counsel, subsequently filed a habeas petition in the District of New Jersey. (*Id.* at 114–24.) On February 19, 2026, Chief Judge Renee Marie Bumb issued the following order granting the habeas petition:

> This matter comes before the Court upon Petitioner Charan [S.]'s Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition" Dkt. No. 1), challenging his detention by immigration authorities under 8 U.S.C. § 1225(b)(2) as unlawful. Respondents filed an answer to the Petition ("Answer" Dkt. No. 5.) Respondents do not challenge this Court's jurisdiction and do not dispute the material facts alleged in the Petition. (Answer at 2.) Respondents submit Petitioner is lawfully detained as an applicant for admission without a bond hearing under 8 U.S.C. § 1225(b)(2), and in the absence of Third Circuit precedent, they rely on a statutory interpretation rejected by this Court and courts within this district. (*Id.*) Under this Court's recent decision in *Marca Lemu v. Soto*, No. 25-cv-17098 (RMB), 2025 WL 3470298 (D.N.J. Dec. 3, 2025)

---

[2]    Petitioner is proceeding in this action in *pro se*. Thus, his filings are entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[3]    The date on which Petitioner was processed and released is unclear — it is not in Petitioner's Form I-213, in Petitioner's briefing, or in Respondents' motion. (*See* ECF Nos. 1, 2, 6.)

2

(interpreting § 1225(b)(2), as well as other recent decisions in this District interpreting § 1225(b)(2), *see e.g., Rivera Zumba v. U.S. Attorney Gen.*, No. 25-CV-14626 (KSH), 2025 WL 2753496, at *9 (D.N.J. Sept. 26, 2025), the Court holds that Petitioner is subject to discretionary detention under § 1226(a), which entitles him to a bond hearing. Therefore, it is ORDERED that the Petition (Dkt. No. 1) is GRANTED. In accordance with 8 U.S.C. § 1226(a), within seven days of this Order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge who shall assess whether Petitioner presents a flight risk or danger to the community pursuant to 8 C.F.R. § 236(c)(8), (d)(1). Within three days of that bond hearing, Respondents shall file a written notice of the outcome of that hearing with this Court. So Ordered by Chief Judge Renee Marie Bumb on 02/19/2026.

(ECF No. 6-1 at 4–5.)

Petitioner was provided a bond hearing before an immigration judge ("IJ") on February 26, 2026. (ECF No. 1 at 18.) Petitioner submitted the following evidence in advance of his bond hearing: Exhibit A (a copy of his passport, U.S. Employment Authorization Card, and I-797 Notice of Action (approving application for employment authorization)); Exhibit B (I-589 Application for Asylum and Withholding of Removal and Form I-589 Receipt Notice); Exhibit C (Proof of Petitioner's Fixed Address (Bank of America bank statement and enrollment in health insurance with EmblemHealth through NY State of Health as of August 5, 2025)); Exhibit D (support letter and copy of U.S. Passport and 2024 tax return for writer of support letter); and Exhibit E (character letter and Employment Authorization Card for writer of character letter). (*Id.* at 19, 28–75.)

On February 26, 2026, the IJ found Petitioner was "an extreme flight risk," noting that he appears to be subject to the safe third country agreement ("STCA") between the United States and Canada, and therefore is statutorily ineligible to apply for asylum in the United States.[4] (*Id.* at 107–112.) The IJ concluded Petitioner's release "presents a serious risk of flight" because the Board of Immigration Appeals has held "[a] [noncitizen] with a greater likelihood of being

---

[4]    As the IJ noted, the STCA is a treaty between the United States and Canada that provides the country of last presence shall determine the refugee status claim of any person "who arrives at a land border port of entry . . . and makes a refugee status claim." (*Id.* at 107–08.) The IJ found it undisputed that Petitioner last arrived in the United States without inspection, admission, or parole from Canada and does not qualify for an exception to the STCA. (*Id.* at 109–112.)

3

granted relief from deportation has a greater motivation to appear for a deportation hearing tha[n] one, who, based on a criminal record or otherwise, has less potential of being granted such relief." (*Id.* at 112 (citing *Matter of Andrade*, 19 I&N Dec. at 490).)  The IJ also looked at other relevant factors that "increase risk of flight," including the fact that he has no family ties to the United States (single, unmarried, no children), has resided in the United States for a short period of time, entered without inspection, admission, or parole, eluded immigration authorities on entry, was unable to articulate his own address, and his sponsorship letter had reliability concerns.  (*Id.* at 112.)  The IJ ultimately denied Petitioner's custody redetermination request.  (*Id.* at 113.)

Petitioner was then transferred to the California City Detention Facility in the Eastern District of California.  (ECF No. 6 at 2.)  On April 21, 2026, Petitioner filed a habeas petition and motion for TRO, alleging claims for a violation of the INA and Due Process Clause.  (ECF No. 1 at 7–8.)  On the same day, this Court granted Petitioner's ex-parte motion for TRO and ordered release.  (ECF No. 5.)  On April 23, 2026, Respondents filed the instant motion to dissolve the TRO.  (ECF No. 6.)

## II.    STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 65 provides that "[o]n 2 days' notice to the party who obtained the order without notice — or on shorter notice set by the court — the adverse party may appear and move to dissolve or modify the order."  Fed. R. Civ. P. 65(b)(4).  "The court must then hear and decide the motion as promptly as justice requires."  *Id.*

For TROs, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO, even where the petitioner shows that there are "serious

questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for injunctive relief. *Id.* at 1134–35.

### III. ANALYSIS[5]

Petitioner alleges his detention violates the INA and the Fifth Amendment Due Process Clause. (ECF No. 1 at 7–9.) Respondents argue both of Petitioner's claims in his habeas petition are meritless as a matter of law on undisputed facts and therefore the TRO should be dissolved and the habeas petition should be denied on the merits. (ECF No. 6 at 3.) With respect to Petitioner's due process claim, Respondents argue Petitioner is not constitutionally entitled to "a wholly new bond determination" two months after the February 26, 2026 bond hearing. (*Id.* at 4.) As the Court granted a TRO on the basis that Petitioner was likely to succeed on his due process claim (ECF No. 5), the Court addresses only that claim below.[6]

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[5] Respondents challenge Petitioner's likelihood of success on the merits of his claims but otherwise do not challenge the remaining TRO elements. (*See* ECF No. 6.) Accordingly, the Court will only address the likelihood of success on the merits.

[6] Respondents also argue Petitioner's INA claim is meritless because neither the statute nor regulations afford him the right to a new bond determination. (ECF No. 6 at 4.) However, the Court finds Petitioner is likely to succeed on the merits of his due process claim (ECF No. 5), which seeks the same relief as his INA claim. The Court therefore declines to consider arguments on Petitioner's INA claim at this juncture.

Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.   Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner has a clear liberty interest, particularly after he was released by immigration authorities in 2024. (ECF No. 1 at 109.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner submits that he was pursuing his asylum claim, has no prior criminal history, has never been convicted of any crime, has no history of violence, and is not a danger to the community. (ECF No. 1 at 4–5.) Nor do Respondents claim that he violated any conditions of his release. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings.

6

*See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### B.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Respondents only meaningfully challenge the second prong as to additional procedural safeguards. As set forth below, the Court finds Respondents violated Petitioner's due process rights. The Court will address each of these factors in turn.

#### i.    Private Interest

First, as explained above, Petitioner has a substantial private interest in remaining free from detention that is unquestionably affected by Respondents' actions in detaining him. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner is also unable to work and he asserts he is unable to obtain adequate medical care while in detention. Moreover, Respondents do not challenge Petitioner's private interest here. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

#### ii.    Risk of Erroneous Deprivation

Second, the risk of erroneous deprivation is considerable given that Petitioner was not afforded a pre-deprivation hearing to determine whether his detention complied with constitutional protections. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his

detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Further, due process puts the burden on the Government to establish by clear and convincing evidence that a noncitizen is a flight risk or a danger to the community to justify denial of bond.[7] *Id.* at 983 n.8.

As an initial matter, there is no dispute Petitioner did not receive a pre-deprivation hearing. There is no evidence in the record that Petitioner was provided an individualized initial custody determination as required under 8 U.S.C. § 1226(a). Additionally, no process was made available for Petitioner to be heard for nearly two months. Petitioner was detained on January 8, 2026, but he was not provided a bond hearing until he was forced to seek judicial relief and a federal court ordered Respondents to provide the bond hearing to which he was statutorily-entitled. Petitioner was not given a post-deprivation bond hearing until February 26, 2026, as ordered by Chief Judge Renee Marie Bumb. (ECF No. 1 at 5; ECF No. 6; ECF No. 6-1 at 4–5.)

///

[7]     The Ninth Circuit applied the canon of constitution avoidance to construe the INA's detention statutes to provide noncitizens in prolonged detention with periodic bond hearings at which the Government bears the burden of proving by clear and convincing evidence that a noncitizen is a danger to the community or a flight risk. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1198–1201 (9th Cir. 2022) (citing *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)). However, the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 296–301, 311–13 (2018), upended this circuit precedent and held the Ninth Circuit misapplied the canon of constitutional avoidance because its interpretations of 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) were not plausible because the periodic bond hearings requirements lacked "any arguable statutory foundation" and the canon of constitutional avoidance was inapposite because it "comes into play only when, after application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* at 1200 (internal citations omitted). However, "[t]he Supreme Court in *Jennings* did not reach the alleged unconstitutionality of immigration detention absent the procedural requirements [the Ninth Circuit] read into the statute, and instead remanded for consideration of constitutional question in the first instance." *Id.* Accordingly, whether the Constitution requires bond hearings with the standard articulated above remains an open question in the Ninth Circuit, but district courts routinely find the standard should apply in these circumstances. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley, et al.*, No. 2:26-cv-00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026).

Further, Chief Judge Bumb's order of a § 1226(a) bond hearing does not replace the process demanded by the Constitution for two reasons.  First, the bond hearing occurred after Petitioner's detention, so it failed to remedy the initial constitutional violation.  The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months.[8]  To hold otherwise would lead to absurd results.  The Government would have a blank check to unilaterally detain every noncitizen without providing any process and hold them indeterminately without any process until the individual seeks relief from a federal court.  Only after a federal judge orders individual relief would the Government be compelled to provide a modicum of process.  This would allow the Government to flout their own regulations with the comfort that, only after judicial intervention and expenditure of resources, will they be brought into compliance with federal law.  The relief for a constitutional violation cannot be to merely bring the Government into compliance — it must be to restore the liberty that was lost.  Second, Chief Judge Bumb ordered a § 1226(a) hearing, not a due process hearing. Chief Judge Bumb resolved Petitioner's habeas petition on statutory grounds and did not address a due process claim.  (ECF No. 6-1 at 4–5.)  Chief Judge Bumb ordered a bond hearing pursuant to 8 U.S.C. § 1226(a) and directed the IJ to "assess whether Petitioner presents a flight risk or danger to the community pursuant to 8 C.F.R. § 236.1(c)(8), (d)(1)." (*Id.* at 5.)  8 C.F.R. § 236.1(c)(8) provides that a noncitizen may be released "provided that the [noncitizen] must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."

///

---

[8]    The Court also finds Respondents' citation to *Rodriguez Diaz*, 53 F.4th at 1203, for the proposition that the Due Process Clause does not require a second bond hearing at which the government bears the burden of proof by clear and convincing evidence to be inapposite.  (ECF No. 6 at 4.)  Here, the fact that Petitioner was provided with a post-deprivation bond hearing does not cure the initial violation.  The Ninth Circuit in *Rodriguez Diaz* did not consider whether the petitioner was unlawfully detained (as Petitioner has been in this case), but whether continued detention required additional process.  53 F.4th 1189.  Here, the Court is assessing the constitutionality of the initial detention and finding Petitioner was unlawfully detained when his liberty was deprived without due process.  Accordingly, the appropriate remedy is release.

9

Thus, the Court finds that in the absence of any safeguards prior to his detention, the risk that Petitioner has been erroneously deprived of his liberty is high. The probative value of such additional procedural safeguards, including notice and a constitutionally compliant due process hearing to determine whether Petitioner's civil detention is justified, is high. *R.D.T.M.*, 2025 WL 2617255, at \*4.

*iii.*      *Government's Interest*

Finally, the Court recognizes the Government has an interest in detaining individuals an IJ has found to be a flight risk. (*See* ECF No. 6.) However, the Government has provided no reason to believe that Petitioner was even suspected of being a flight risk at the time they arrested him. Petitioner's release from immigration custody in 2024 would necessarily be based on his satisfactory demonstration that his release "would not pose a danger" and that he was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Petitioner appears to have complied with immigration requirements since his release, including filing an asylum application that is currently pending. Respondents do not identify their justification in reversing course to re-detain Petitioner in January without any changing circumstances. Moreover, Petitioner does not have a final order of removal and his appearance at future immigration proceedings could be reasonably ensured by bond or enrollment in supervision. Further, the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at \*5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Chief Judge Bumb found applies to him. (ECF No. 6-1 at 5.) Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him. *See also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

///

10

The Court finds that, each of the above factors weigh in Petitioner's favor and under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where there is no final order of removal, no criminal history, and no individualized changed circumstances to justify re-detention — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

Yet, Respondents did not provide either notice nor a pre-deprivation hearing.  Moreover, Respondents did not provide a post-deprivation bond hearing until nearly two months into Petitioner's detention and only after court order.  Accordingly, Petitioner has shown he is likely to succeed on the merits of his procedural due process claim.

Based on the foregoing, the Court finds all the TRO elements are still met and declines to dissolve the TRO in effect.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**IV.    CONCLUSION**

For the foregoing reasons, Respondents' Motion to Dissolve the Temporary Restraining Order is DENIED.  (ECF No. 6.)

IT IS SO ORDERED.

Date: April 27, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE